1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STEVEN FISHMAN,

                          Plaintiff,

          v.

ARCOLA WASHINGTON-
ADDUCI, et al.,

                          Defendants.

Case No. CV 13-4729 MWF(JC)

ORDER ACCEPTING FINDINGS,
CONCLUSIONS, AND
RECOMMENDATIONS OF UNITED
STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636, the Court has reviewed the First Amended Complaint, all documents filed by the parties in connection with the Motion For Summary Judgment ("Motion") filed by remaining defendants Arcola Washington-Adduci, Thomas Scarantino, Everett Cottrell, Ulysses Logeman, Juan Guerrero, Francisco Ortega, and Jovan Green, and all of the records herein, including the September 27, 2016 Report and Recommendation of United States Magistrate Judge ("Report and Recommendation" or "R&R"), defendants' Objections to Portions of the Report and Recommendation ("Objections" or "Obj."), and plaintiff's Opposition to the Objections.  The Court has further made a *de novo* determination of those portions of the Report and Recommendation to

///

1   which objection is made.[1]  The Court concurs with and accepts the findings,

2   conclusions, and recommendations of the United States Magistrate Judge and

3   overrules the Objections.  The Court specifically addresses portions of the

4   Objections below.[2]

5        First, to the extent the Objections contend that the Magistrate Judge

6   erroneously conflated "the constitutional inquiry" with its qualified immunity

7   analysis (see, e.g., Obj. at 2 (citing Estate of Ford v. Ramirez-Palmer, 301 F.3d

8   1043, 1049, 1053 (9th Cir. 2002)), the Court disagrees, but notes, in any event, that

9   conducting the qualified immunity analysis in precisely the manner set forth by the

10  Ninth Circuit in Estate of Ford – i.e., (1) taking the facts in the light most favorable

11  to the non-moving party, and asking whether those facts show that the defendants'

12  conduct violated a constitutional right; and (2) determining whether the

13  constitutional right that would be violated was clearly established at the time in

14  issue – leads this Court to reach the same conclusions reached by the Magistrate

15  Judge in the Report and Recommendation.

16       Second, to the extent the Objections contend that the Magistrate Judge

17  erroneously determined that multiple defendants were not entitled to qualified

18  immunity because plaintiff – who has the burden to prove that the right allegedly

19  violated was clearly established at the time of the alleged misconduct – did not

20  himself refute or address defendants' assertion of qualified immunity regarding his

21  First Amendment retaliation claim (Obj. at 4-5), the Court again disagrees.  While

22  plaintiff, who is proceeding pro se, indisputably has the foregoing burden, the

23  authorities cited by defendants do not prohibit courts, who must liberally construe

24  _____

25       [1]This Court, in an exercise of its discretion, declines to consider new evidence and

26  arguments presented for the first time in the Objections.  See United States v. Howell, 231 F.3d
    615, 621 (9th Cir. 2000), cert. denied, 534 U.S. 831 (2001).

27
         [2]The Court uses the same abbreviations that were defined in the Report and

28  Recommendation.

2

*pro se* pleadings, from concluding that such burden has been met based on the record before it, irrespective of whether or not a plaintiff expressly so argues.

Third, defendants generally object to findings that the first element of the qualified immunity analysis has been satisfied for plaintiff's First Amendment retaliation claim. (Obj. at 5-9). For example, defendants state that "the R&R found that there was a triable issue as to whether Plaintiff engaged in protected conduct by seeking 'help from an attorney regarding the Lefkowitz Attacks[,]'" and that they "object because plaintiff has no evidence that his purported complaint was ever presented to any BOP official." (Obj. at 5) (citing R&R at 23:8-10, 27:19-28:2). Such argument conflates two different prongs of a First Amendment retaliation claim, namely whether plaintiff engaged in protected conduct in the first instance and whether the plaintiff's protected conduct was the "substantial or motivating factor" for a defendant's allegedly retaliatory action. As to the former, this Court agrees with the Magistrate Judge's determination that, when viewed in the light most favorable to plaintiff, the evidence in the record supports a reasonable inference that plaintiff engaged in conduct protected by the First Amendment when he wrote to an attorney for help regarding the Lefkowitz Attacks because defendant Logeman assertedly had not taken reasonable measures to address his complaints and that plaintiff did so with the expectation that the attorney would report the official misconduct to prison authorities. As to the latter, this Court likewise agrees that the evidence in the record – which has been detailed in the Report and Recommendation – supports reasonable inferences that an attorney had in fact complained to prison authorities on plaintiff's behalf, that defendants Washington-Adduci and Cottrell knew of the complaint, and that such complaint substantially motivated them to place and keep plaintiff in the SHU. (R&R at 10-11, 25-26) (referencing evidence that McCray told plaintiff that Washington-Adduci and Cottrell had ordered plaintiff to be placed in SHU

///

because he had communicated to an outside attorney about the Lefkowitz Attacks[3] and that plaintiff heard Washington-Adduci tell Cottrell that plaintiff had been placed in the SHU for contacting attorney about the rapes).[4]

Fourth, defendants likewise generally object to findings that the first element of the qualified immunity analysis has been satisfied for plaintiff's Eighth Amendment claim.  (Obj. at 12-17).  For example, defendants object that plaintiff

---

[3]As noted in the Report and Recommendation (R&R at 25 n.11), McCray's statements, even if hearsay, may properly be considered on summary judgment because plaintiff could present McCray to testify regarding such party admissions at trial.  See JL Beverage Co., LLC, 828 F.3d 1098, 1110 (9th Cir. 2016) (at summary judgment district court may consider hearsay evidence submitted in inadmissible form so long as underlying evidence could be provided in admissible form at trial, such as live testimony).  Defendants' attempt to distinguish the foregoing case on its facts (Obj. at 7 n. 3) is not persuasive.  Alternatively, as the Report and Recommendation also notes, McCray's statements could at least arguably constitute non-hearsay party admissions of Washington-Adduci and Cottrell under Fed. R. Evid. 801(d)(2)(D) to the extent McCray can be deemed an agent of such defendants acting within the scope of such agency in following their stated orders.  Defendants' contention that the "Court's reliance on an agency theory in the context of statements made by a company's representatives is distinguishable from a Bivens action that requires person involvement" (Obj. at 7 n.2), improperly conflates admissibility under the Federal Rules of Evidence with liability under Bivens.

[4]Defendants suggest that it is improper for the Court to rely on plaintiff's attestations because they are "self-serving and speculative."  (See, e.g., Obj. at 6, 7).  "The district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature."  Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir. 2015) (citation omitted).  Further, defendants' own self-serving characterization of plaintiff's declaration as "speculative" does not, in this case, justify disregarding pertinent facts to which plaintiff attests – particularly attestations regarding things plaintiff himself saw or heard.  Cf. id. ("The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence.") (citations omitted).  For example, defendants argue that plaintiff cannot establish that defendant Washington-Adduci caused plaintiff to be placed in the SHU based on the statement in plaintiff's declaration "that [defendant] Washington-Adduci claimed she placed [plaintiff] in the SHU for contacting an attorney."  (Obj. at 7) (citing R&R at 25).  Defendants argument is incorrect.  See, e.g., Nigro, 784 F.3d at 498 (plaintiff's "uncorroborated and self-serving" declaration and deposition testimony "sufficient to establish a genuine dispute of material fact" since the testimony "related statements made to [plaintiff] both in person and over the telephone [and] testimony was based on personal knowledge, legally relevant, and internally consistent").

1  "cannot establish that [defendants] Guerrero and Green deliberately disregarded

2  any complaints about the SHU cell that required further action" in connection with

3  plaintiff's Eighth Amendment claim, because "[t]he undisputed BOP records show

4  that there was regular maintenance of the ventilation and plumbing systems [in the

5  SHU]. . . ."   (Obj. at 15) (citing MSJ Ex. F; DUF ¶ 53).  Nonetheless, neither

6  citation supports such an assertion.  (See MSJ Ex. F [staff log mostly of SHU

7  rounds]; DUF ¶ 53 [uncontroverted fact that "there were no work orders for SHU"

8  ventilation, plumbing, or water systems when plaintiff confined in SHU]).  Here, as

9  detailed in the Report and Recommendation, the evidence, viewed in the light most

10  favorable to plaintiff, instead supports an inference that such defendants knew that

11  plaintiff's basic needs were not being met and were deliberately indifferent.  (R&R

12  at 38-42).

13       As another example, defendants object that "[t]he R&R found a triable issue

14  of fact as to whether Plaintiff was denied breathable air, cold water and a

15  functioning toilet[,]" arguing plaintiff, "offers no admissible evidence that

16  Washington-Adduci or Cottrell *actually observed* any of these alleged SHU

17  conditions."  (Obj. at 16) (citing R&R at 33:5-10, 35:8-12) (emphasis added).

18  Nonetheless, an Eighth Amendment conditions of confinement claim, in pertinent

19  part, only requires evidence that a prison official "had actual knowledge" of an

20  inmate's inhumane conditions, not that the official gained such knowledge by

21  "actually observ[ing]" the conditions at issue.  See Johnson v. Lewis, 217 F.3d

22  726, 734 (9th Cir. 2000), cert. denied, 532 U.S. 1065 (2001).  Here, as detailed in

23  the Report and Recommendation, the evidence, viewed in the light most favorable

24  to plaintiff, supports an inference that such defendants were expressly told in

25  explicit detail about the inhumane conditions of the cell occupied by plaintiff.

26  (R&R at 33, 35).

27       Fifth, defendants object that the Report and Recommendation used "an

28  impermissible level of generality" to define the legal right at issue for the second

element of the qualified immunity analysis.  (Obj. at 9-10, 17-20).  Defendants say the appropriately "particularized" right for plaintiff's First Amendment retaliation claim is "whether it would be clear to a reasonable correctional officer that placing an inmate in the SHU pending a sexual assault investigation for his safety was retaliation for a purported letter to another inmate's counsel as presented here, is clearly established."  (Obj. at 9).  For plaintiff's Eighth Amendment inhumane conditions of confinement claim, defendants frame the right at issue as "whether it would be clear to a reasonable correctional officer that Defendants' response to complaints about a toilet that took multiple times to flush, water quality which they did not control, ventilation and temperature as presented here, was clearly established."  (Obj. at 18).  Defendants' definitions, however, incorrectly rely on an interpretation of disputed material facts which favors themselves.  When analyzing a claim of qualified immunity at the summary judgment stage, the Court must view disputed facts in the light most favorable to the *non*-moving party (*i.e.*, the plaintiff here).  See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) ("[U]nder either prong [of qualified-immunity analysis], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.") (citations omitted).

Defendants also argue that the Report and Recommendation improperly relies on two prior cases which do not "clearly" establish any First Amendment right that is applicable under "the specific circumstances in this case[.]"  (Obj. at 9-10) (citing R&R at 23, 44; Rhodes v. Robinson, 408 F.3d 559 (9th Cir. 2005); Pratt v. Rowland, 65 F.3d 802 (9th Cir. 1995)).  Nonetheless, the second element of the qualified immunity analysis does not, as defendants suggest, require a prior case that is "directly on point" or that has "identical" facts.  See Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.") (per curiam) (quoting Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011));

1   Hope v. Pelzer, 536 U.S. 730, 740 (2002).  Here, when viewed in the light most

2   favorable to plaintiff, the evidence shows that defendants deprived plaintiff of

3   several basic human needs (*i.e.*, "breathable air" and "drinkable water") to punish

4   plaintiff for reporting official misconduct to the BOP – which is sufficient to

5   establish typical First Amendment retaliation and Eighth Amendment inhumane

6   conditions of confinement claims.  (See R&R at 20-28, 32-42).  As the Report and

7   Recommendation explains, under existing precedent at the time in issue, it was

8   beyond dispute that such actions "crossed the line of what is constitutionally

9   permissible."  See generally White v. Pauly, 137 S. Ct. 548, 552 (2017) ("general

10  statements of the law are not inherently incapable of . . . creat[ing] clearly

11  established law" in cases involving "obvious" or "run-of-the-mill" constitutional

12  violations) (per curiam) (citing United States v. Lanier, 520 U.S. 259, 271 (1997);

13  Anderson v. Creighton, 483 U.S. 635, 640 (1987)); Brosseau v. Haugen, 543 U.S.

14  194, 199 (2004) (for certain "obvious" constitutional violations, general

15  constitutional tests may be sufficiently particularized to "clearly establish" legal

16  right "even without a body of relevant case law") (citations and internal quotation

17  marks omitted); Hope, 536 U.S. at 741 ("[G]eneral statements of the law" may be

18  sufficient for qualified immunity analysis where "a general constitutional rule

19  already identified in the decisional law [applies] with obvious clarity to the specific

20  conduct in question, even though 'the very action in question has [not] previously

21  been held unlawful[.]") (citation omitted).

22        The remaining portions of the Objections are largely based on the same

23  arguments previously raised, and which the Report and Recommendation properly

24  concludes have no merit.

25        IT IS HEREBY ORDERED:  (1) the Evidentiary Objections are overruled;

26  (2) the Motion is granted in part and denied in part for the reasons described in the

27  Report and Recommendation; (3) summary judgment is granted in favor of

28  defendants Scarantino and Logeman on plaintiff's First Amendment retaliation and

related conspiracy claims (the only remaining claims against such defendants); (4) summary judgment is denied as to (a) defendants Washington-Adduci and Cottrell on plaintiff's First Amendment retaliation, Eighth Amendment inhumane conditions of confinement and related conspiracy claims; and (b) defendants Ortega, Guerrero, and Green on plaintiff's Eighth Amendment inhumane conditions of confinement claim.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Report and Recommendation on plaintiff and counsel for defendants.

IT IS SO ORDERED.

DATED: March 29, 2017

_____

HONORABLE MICHAEL W. FITZGERALD
UNITED STATES DISTRICT JUDGE

8